**JUDGE STEIN**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC.; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; VIRGIN RECORDS AMERICA, INC.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GROVE PARK MUSIC, INC.; EMI LONGITUDE MUSIC; EMI ROBBINS CATALOG INC.; EMI U CATALOG, INC.; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC.; EMI WATERFORD MUSIC, INC., | No. ___ Civ. _____ ( _ ) |
| Plaintiffs, | |
| v. | COMPLAINT |
| MULTIPLY, INC., | |
| Defendant. | |

07 CV 11357



Plaintiffs Capitol Records, Inc.; Caroline Records, Inc.; EMI Christian Music Group Inc.; and Virgin Records America, Inc. (collectively, the "EMI Music Plaintiffs"), and Colgems-EMI Music Inc.; EMI April Music Inc.; EMI Blackwood Music; EMI Full Keel Music; EMI Grove Park Music, Inc.; EMI Longitude Music; EMI Robbins Catalog Inc.; EMI U Catalog, Inc.; EMI Virgin Music, Inc.; EMI Virgin Songs, Inc.; and EMI Waterford Music, Inc. (collectively, the "EMI Publishing Plaintiffs") (the EMI Music Plaintiffs and the EMI Publishing Plaintiffs, together, "Plaintiffs" or "EMI"), by their attorneys Pryor Cashman LLP, allege for their Complaint against defendant Multiply, Inc. ("Defendant" or "Multiply," which also refers to Defendant's website Multiply.com),

#570866 v1                                    1

on personal knowledge as to matters relating to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.    This is an action for direct, contributory, and vicarious copyright infringement, and for inducement of copyright infringement.  Through its Internet and mobile sites and services, Multiply reproduces, distributes, publicly displays and/or performs -- and encourages, induces, contributes to, and profits from the reproduction, distribution display and/or performance by others of -- sound recordings and videos embodying copyrighted content, including sound recordings and musical compositions owned or controlled by EMI.

2.    Multiply functions by permitting, encouraging, and enabling its users to upload and "share" commercial sound recordings of well-known musical groups and other performers, and music videos, concert footage, and other audiovisual recordings synchronized with sound consisting largely of copyrighted music.  All of this copyrighted content is hosted on, and transferred to other Multiply users from, Multiply's servers. Multiply then permits, encourages and enables its users to search for and locate, and then to reproduce or "download" complete, permanent digital copies of the audio recordings, and to perform or "stream" complete digital copies of the audiovisual recordings.

3.    Moreover, unlike some sites which have begun to employ available content recognition and filtering solutions to curb the unlawful reproduction and distribution of copyrighted content and to compensate copyright owners, Multiply turns a blind eye to the massive infringement occurring on its site, including by ignoring "red flags" or other

obvious indicia of infringement. Indeed, Multiply hosts pages, profiles and sub-sites that bear every indicia of being virtual bazaars of infringing music and video files.

4.     Multiply not only fails to block access to, filter or remove these obvious havens of piracy, users searching for copyrighted music on Multiply are directed to them by Multiply. A user can search on Multiply by song title or by artist, and is directed (via links) to these pirate sites. A user can also "subscribe" to Multiply-hosted pages, profiles or sub-sites, and post requests on those pages, profiles or sites for particular copyrighted recordings or videos, or groups of recordings or videos. The user will then receive e-mails from "multiply@multiply.com" with notes from, and links to, Multiply-hosted pages, profiles or sub-sites that have that made that copyrighted recording available for download or streaming.

5.     Multiply "monetizes" the copyrighted content of others by selling advertising that appears on the pages of both Multiply.com and the Multiply-hosted pages, profiles or sub-sites created by Multiply users. Multiply also purportedly derives, or plans to derive, revenue from non-advertising sources, including subscription upgrades that allow users to "share" more infringing material. Multiply knows that its popularity (and concomitant value, as demonstrated by the advertising and other revenue that it generates, and by the recent $16.6 million investment in the site raised with the help of a venture capital partner) derives from the copyrighted music and video content that is being unlawfully exploited on and via its sites and services.

6.     Like Napster, Aimster, KaZaA, and Morpheus before it, Multiply claims to be all about "sharing," when, in fact, it is all about infringing the copyrighted content of others. Multiply bills itself as an "easy-to-use, one-stop solution for sharing a variety of

digital media." But as both Judge Patel and the Ninth Circuit made clear in *A&M Records v. Napster*, viral, peer-to-peer distribution of digital files embodying copyrighted content is not "sharing"; it is theft. And, like Napster, Multiply is enabling, fostering, encouraging, inducing, contributing to, and profiting from that theft.

7.    Multiply's infringement, is knowing, willful, and massive and will continue unless enjoined by this Court. Indeed, while the acts of Multiply alleged herein have at all times been undertaken with full knowledge, actual and constructive, of the infringing activities alleged herein, EMI specifically put Multiply on further notice of the infringing acts of Multiply and its users by sending cease and desist letters and take down notices to Multiply by registered mail, overnight courier, and e-mail. Multiply ignored these communications in preference for continuing its willful infringing activities in the pursuit of profit built on the uncompensated and unlicensed use of EMI's intellectual property.

## **THE PARTIES**

8.    Plaintiff Capitol Records, Inc. is a Delaware corporation, with its principal place of business in New York, New York.

9.    Plaintiff Caroline Records, Inc. is a New York corporation, with its principal place of business in New York, New York.

10.    Plaintiff EMI Christian Music Group Inc. is a California corporation, with its principal place of business in Brentwood, Tennessee.

11.    Plaintiff Virgin Records America, Inc. is a California corporation, with its principal place of business in New York, New York.

12. Plaintiff Beechwood Music Corporation is a California corporation, with its principal place of business in New York, New York.

13. Plaintiff Colgems-EMI Music Inc. is a Delaware corporation, with its principal place of business in New York, New York.

14. Plaintiff EMI April Music Inc. is a Connecticut corporation, with its principal place of business in New York, New York.

15. Plaintiff EMI Blackwood Music is a Connecticut corporation, with its principal place of business in New York, New York.

16. Plaintiff EMI Full Keel Music is a duly organized corporation, with its principal place of business in New York, New York.

17. Plaintiff EMI Grove Park Music, Inc. is a duly organized corporation, with its principal place of business in New York, New York.

18. Plaintiff EMI Longitude Music is a duly organized corporation, with its principal place of business in New York, New York.

19. Plaintiff EMI Robbins Catalog Inc. is a New York corporation, with its principal place of business in New York, New York.

20. Plaintiff EMI U Catalog, Inc. is a New York corporation, with its principal place of business in New York, New York.

21. Plaintiff EMI Virgin Music, Inc. is a New York corporation, with its principal place of business in New York, New York.

22. Plaintiff EMI Virgin Songs, Inc. is a New York corporation, with its principal place of business in New York, NY.

23.    Plaintiff EMI Waterford Music, Inc. is a California corporation, with its principal place of business in New York, New York.

24.    Defendant Multiply, Inc. is a Delaware company that maintains one or more offices in New York, NY.

## JURISDICTION AND VENUE

25.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq*.

26.    This Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) and (b) and pursuant to the supplemental jurisdiction provisions of 28 U.S.C. § 1367.

27.    This Court has personal jurisdiction over Defendant. Defendant, acting alone and in concert with others, does continuous and systematic business in New York State and in this District and maintains one or more offices in this District, and is therefore a domiciliary of New York State. New York Civil Practice Law and Rules ("CPLR") § 301.

28.    This Court also has personal jurisdiction over Defendant pursuant to CPLR § 302. Defendant, acting along and in concert with others, transacts business within New York State and in this District and supplies goods and services in New York State by permitting users who reside in New York State frequently to upload, download, stream, view and/or listen to videos and sound recordings. CPLR § 302(a)(1). Defendant commits tortious acts of copyright infringement within New York State every time it permits, encourages, and enables a user to upload, download, stream, view and/or listen to a copyright-protected video or sound recording without the express permission or

license of New York State resident copyright holders. CPLR § 302(a)(3). Defendant regularly does and solicits business within New York State and derives substantial revenue from its sites and services within New York State. CPLR § 302(a)(3)(i).

29.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

## FACTUAL ALLEGATIONS

### A.    The Plaintiffs and Their Copyrighted Works

30.    The EMI Music Plaintiffs are among the major record companies in the United States and the world.    They are in the business of creating, producing, manufacturing, distributing, selling, and licensing the distribution and sale of physical, electronic and digital sound recordings, or arranging to do so, in the United States.    The EMI Music Plaintiffs' sound recordings embody the recorded performances of recording artists spanning all musical tastes and genres.    Their artist roster, collectively, includes world famous stars and developing artists such as Lily Allen, Corinne Bailey Rae, The Beach Boys, The Beatles, Dierks Bentley, Coldplay, DC Talk, Gorillaz, Norah Jones, The Kooks, Lenny Kravitz, Kylie Minogue, Pink Floyd, Joss Stone, The Rolling Stones, 30 Seconds To Mars, KT Tunstall, Keith Urban and Robbie Williams, plus world renowned classical artists including Angela Gheorghiu, Yehudi Menuhin, Itzhak Perlman and Simon Rattle.    The EMI Music Plaintiffs own the copyrights and/or the exclusive rights to reproduce, distribute and publicly perform, and to authorize the reproduction, distribution and performance of, such sound recordings (each, an "EMI Recording") for which the EMI Music Plaintiffs and/or their predecessors-in-interest have obtained or applied for a Certificate of Copyright Registration issued by the Register of Copyrights.

The EMI Recordings include, for illustrative purposes, those sound recordings listed on Exhibit ("Ex.") A hereto, each of which has been infringed by Defendant in the manner set forth herein.

31. One of the EMI Music Plaintiffs, Capitol Records, Inc., further owns rights to sound recordings that were initially "fixed" prior to February 15, 1972 (each, a "Pre-1972 Recording") and that are therefore subject to protection under state law. The Pre-1972 Recordings include, for illustrative purposes, those sound recordings listed and so designated on Exhibit A hereto, each of which has been infringed by Defendant in the manner set forth herein.

32. The EMI Publishing Plaintiffs are among the leading music publishers in the United States and the world. They are in the business of acquiring, owning, exploiting, protecting, and administering rights in musical compositions in the United States. They collectively control one of the largest catalogues of copyrighted musical compositions in the world, containing more than one million contemporary and classic titles. The catalogue includes such songs as *Baby Love, Bohemian Rhapsody, Crazy in Love, Daydream Believer, Every Breath You Take, I Heard It Through The Grapevine, The James Bond Theme, New York, New York, Over the Rainbow, Santa Claus is Comin' to Town, Singin' In The Rain, Smells Like Teen Spirit, We Will Rock You,* and *Wild Thing.* The companies control copyrighted compositions written and composed by many of the world's best songwriters including James Blunt, Kurt Cobain, Jay-Z, Alicia Keys, Pink, Rob Thomas, Sting, Usher, Kanye West and Amy Winehouse. The EMI Publishing Plaintiffs own the copyrights and/or the exclusive rights to reproduce, distribute and publicly perform, and to authorize the reproduction, distribution and performance of,

such compositions (each, an "EMI Composition") for which the EMI Publishing Plaintiffs and/or their predecessors-in-interest have obtained or applied for a Certificate of Copyright Registration issued by the Register of Copyrights. The EMI Compositions include, for illustrative purposes, those compositions listed on Exhibit B hereto, each of which has been infringed by Defendant in the manner set forth herein.

33. EMI is a leader and innovator in the development, marketing, sales, promotion, and distribution of music around the world. In particular, EMI has been in the vanguard in recognizing the opportunities in the digital age to connect its music with fans, and has led the market in bringing its catalogue of music to fans in a burgeoning number of digital formats and business models in alliance with hundreds of digital partners across the globe. As a result, consumers can today experience EMI's repertoire as embodied in audio and video recordings in a variety of legally authorized digital formats around the globe, and the artists and writers who create those recordings, and the companies that invest in them, can be fairly compensated for such digital exploitation.

**B.    Defendant Multiply**

34. Defendant Multiply owns and operates the Internet and mobile sites and services that are the subject of this Complaint. Multiply, founded in December 2003, is one more in a series of Internet sites that has built a business -- and profited handsomely therefrom -- by appropriating the entire value of others' intellectual property, without making any investment to create or acquire the lawful right to exploit such intellectual property.

35. Using the ability to "share" copyrighted content, including copyrighted music and audio and video recordings, as a draw, Multiply claims that its usage has been

steadily gaining traction as one of the most popular sites on the Web today. According to Multiply, during 2006, Multiply saw a 500% growth in reach, page views and items posted, and in August 2007 the site surpassed 6 million registered users. (*See* Ex. C.)

36.  Multiply recently launched an iPhone compatible version of its service, which will allow users to reproduce and distribute copyrighted content "on the go" via an iPhone. Multiply founder and CEO Peter Pezaris claims Multiply on the iPhone is "the most feature-rich, mobile media sharing solution available." (*See* Exs. D & E.)

37.  Multiply has announced that it has been able to attract millions of dollars of financial support from various investors, all of whom benefit from Multiply's infringing acts. Multiply's publicly disclosed investors include VantagePoint Venture Partners (a venture capital firm with more than $5 billion in assets under management, whose "Digital Media and Internet" team recently raised $16.6 million dollars in venture capital for Multiply), Point Judith Capital, and Transcosmos Investments. (*See* Exs. F & G.) Certain of Multiply's investors also reportedly serve on Multiply's board, including VantagePoint Managing Director David Scott Carlick, Point Judith General Partner Sean Marsh, and Transcosmos Executive Vice President Shin Nagakura. (*See* Ex. C.) Plaintiffs reserve the right to add as defendants Multiply's investors, directors and officers once the full nature and extent of their contribution to, and facilitation of, the infringing conduct taking place on Multiply is known.

## C.   **Multiply's Infringing Sites, Services and Activities**

38.  Multiply functions by permitting, encouraging, and enabling its users to upload and "share" commercial sound recordings of well-known musical groups and other performers, and music videos, concert footage, and other audiovisual recordings

synchronized with sound consisting largely of copyrighted music. All of this copyrighted content is hosted on and transferred to other users from Multiply's servers. In fact, Multiply promotes the fact that Multiply offers "free unlimited storage space, so you can make it the permanent home for all of your stuff." (*See* Ex. H.)

39. Unlike those sites that only stream sound recordings to users, Multiply allows users to reproduce or "download" complete, permanent digital copies of copyrighted sound recordings. These recordings will play seamlessly in iTunes and other digital media.

40. On its "about" page, Multiply encourages users to upload or "share" digital music and videos with others. (See Ex. H.) Multiply also informs users that they can "upload the following types of music files to your Multiply site: mp3, m4a, wma, wav, aac, ogg, aif and au." (*See* Ex. I.)

41. Unlike some sites which have begun to employ available content recognition and filtering solutions to curb the unlawful reproduction and distribution of copyrighted content and to compensate copyright owners, Multiply conspicuously and purposefully turns a blind eye to the massive infringements occurring on its site, including by ignoring "red flags" or other obvious indicia of infringement. Indeed, Multiply directs users to web pages, profiles, or sub-sites -- all of which are hosted by Multiply -- that are virtual bazaars of infringing music and video files. These pages, profiles, or sub-sites brazenly offer for full, permanent download (and invite others to upload) a cornucopia of infringing, copyrighted sound recordings, They offer for streaming (and invite others to upload to Multiply so that they may be streamed from Multiply) a variety of audiovisual works, including music videos and other videos

synchronized with sound consisting largely of copyrighted music. And they often display unauthorized copies of photos, album art, and logos, including those owned or controlled by EMI and/or its artists or writers. Indeed, some of these subsites incorporate the name of an EMI artist or writer (for example, http://beatles.multiply.com, http://coldplay.multiply.com, http://kttunstall.multiply.com, http://lilyallen.multiply.com, and http://davidbowie.multiply.com).

42. For example, one such sub-site, http://mp3addicted.multiply.com, specifically purports to be "for MP3 collectors," encourages users to "share your stuff," and offers for download a selection of hundreds of MP3 files of copyrighted sound recordings. These include recordings owned by the EMI Music Plaintiffs and/or embodying compositions owned or controlled by the EMI Publishing Plaintiffs (such as recordings embodying performances of or songs by A Perfect Circle, Arctic Monkeys, The Beatles, Coldplay, Good Charlotte, the Eagles, Iron Maiden, Matchbox 20, Nirvana, the Police, and Yellowcard). All a user has to do to download any of these recordings is click the "Download" link or button next to the track name. http://mp3addicted.multiply.com also offers dozens of copyrighted audiovisual recordings owned by the EMI Music Plaintiffs, embodying sound recordings owned by the EMI Music Plaintiffs, and/or embodying compositions owned or controlled by the EMI Publishing Plaintiffs (including, for example, so-called "label" or "MTV-style" videos or concert footage featuring Lily Allen, Korn, Joss Stone, and Amy Winehouse). (*See* Ex. J.)

43. http://mp3sharing.multiply.com is another obvious bazaar of infringing music files hosted by, searchable from, and accessible via Multiply. This sub-site also

offers for permanent download hundreds of infringing MP3 files, including complete albums, and encourages users as follows: "hey, anyone can share their mp3? no matter pop, rock, country, new age, classical, any genre of the music, just share it here . . . lets the music fly~." The recordings being unlawfully exploited include those owned by the EMI Music Plaintiffs and/or embodying compositions owned or controlled by the EMI Publishing Plaintiffs (such as recordings of or embodying songs by David Bowie, Joss Stone, and KT Tunstall). Multiply plainly knows or should know that the material on this site is infringing, particularly in light of the exhortations above, and the fact that various images disparaging of the RIAA, the record industry, and its attorneys are interspersed with the infringing recordings. (*See* Ex. K.)

44. In addition, this site collects links to other Multiply-hosted sites of other Multiply users who, in turn, offer and encourage others to upload other infringing recordings and videos. For example, one site linked to is http://dukeofdisc.multiply.com, which solicits and encourages others to post recordings to "help collect every song that made the Billboard Top 100 Charts from 1955 through whenever. . . . There are some songs that made the Billboard charts that I do not have. If you can find them on Mp3's for me, I would appreciate it. Missing titles will be posted in the blog." (*See* Ex. L.)

45. Another such sub-site, http://sometimesticklish.multiply.com/music, offers the following "disclaimer" which makes it apparent that the site is a haven for unlicensed content (including recordings owned by the EMI Music Plaintiffs and/or embodying compositions owned or controlled by the EMI Publishing Plaintiffs):

> Sometimesticklish.multiply.com does not claim ownership of any of the music temporarily hosted on the site. This is merely for promotional purposes. If the respective copyright owners wish for their songs to be taken down, please contact us and it shall be done immediately.

(*See* Ex. M.)  Of course, this "I know it's copyrighted, but I'll keep on infringing unless and until you tell me to stop" view of copyright law is not supportable under any interpretation of the Act, and EMI need not inform Multiply and each of its users that they do not wish to be ripped off.

46.    There are innumerable other, similar pages, profiles or sub-sites hosted on and searchable via Multiply, including, solely by way of example, http://beatles.multiply.com (devoted to the music of The Beatles, and offering what appears to be every Beatles recording ever released, countless bootlegged recordings, copyrighted Beatles' videos, concert footage and movie trailers, and unauthorized derivative works embodying Beatles' footage and synchronizing Beatles music); http://coldplay.multiply.com (devoted to the music of Coldplay and offering dozens of Coldplay recordings, bootlegged recordings and videos); http://allaboutmetal.multply.com (devoted to heavy metal music and offering hundreds of heavy metal sound recordings and videos, including those owned by the EMI Music Plaintiffs and/or embodying compositions owned or controlled by the EMI Publishing Plaintiffs); and http://onmusicdownloads.multiply.com (which posted, among other recordings owned by the EMI Music Plaintiffs and/or embodying compositions owned or controlled by the EMI Publishing Plaintiffs, the new Alicia Keys album, *As I Am*, in its entirety, a week prior to the actual release date).  (*See, e.g.*, Exs. N-Q.)

47.    Not only does Multiply fail to block access to, filter out, or take down, these obvious havens of piracy, it directs users searching for copyrighted music on Multiply to these sites.  A user can search on Multiply by song title or by artist (by entering the song title or the artist's name in a search query box). The user is then directed (via links) to

Multiply-hosted user pages, profiles, or sub-sites (such as the ones described above) offering for download or streaming recordings or videos of that song or artist.

48.  For example, individual searches on Multiply for EMI artists "Gorillaz," "Chingy," "Janet Jackson," "The Beatles," "Coldplay," "Norah Jones, "OK Go" and "The Red Jump Suit Apparatus," and EMI songwriter "Amy Winehouse," each yielded hundreds of Multiply-hosted pages, profiles or sites offering for download recordings, and in many cases complete albums, by such artist. (*See, e.g.,* Ex. R.)

49.  When a user creates a page, profile, or sub-site on Multiply, and uploads recordings or videos to such profile, page or sub-site, the user is encouraged by Multiply to send an e-mail to all of the contacts in the user's address book letting those contacts know that the infringing content is available. (*See* Ex. S.)  The content also becomes searchable to other users of Multiply in the manner described in the preceding paragraph.

50.  A Multiply user can "subscribe" to the pages, profiles or sub-sites of other users (whether or not he or she is a contact in such other user's address book).  Such user will then receive (on his or her "My Multiply" page on his or her own page, profile or sub-site) "Recent Updates" informing such user whenever new recordings or videos have been posted to the site(s) to which such user has "subscribed," and providing a link to such content.  He or she will also be informed of requests from other "subscribers" to the same site(s) that certain particular infringing, copyrighted recordings or videos be uploaded and made available for download or streaming. (*See* Ex. T.)

51.  When a user posts such a request for a particular infringing, copyrighted recording or video, or group of recordings or videos, on pages, profiles or sub-sites to which he or she "subscribes," the user will receive e-mails from

"multiply@multiply.com" with notes from, and links to, other Multiply-hosted user pages, profiles, or sub-sites that have that recording available for download or streaming. (*See* Ex. U.)

52.    While the acts of Multiply alleged herein have at all times been undertaken with full knowledge, actual and constructive, of the infringing activities alleged herein, EMI put Multiply on further notice of the infringing acts of Multiply and its users by sending cease and desist letters and take down notices to Multiply. On August 15, 2007, Pryor Cashman LLP sent a letter to Multiply on behalf of EMI Music Publishing and each of its affiliated music publishing companies, which include the EMI Publishing Plaintiffs, providing Multiply with written notice of its unlawful activities. (*See* Ex. V.) The letter was sent by registered mail, overnight courier, and e-mail. It was ignored by Multiply.

53.    On September 10, 2007, Pryor Cashman LLP sent a letter to Multiply on behalf of EMI Music North America and each of its affiliated record labels, which include the EMI Music Plaintiffs, again providing Multiply with written notice of its unlawful activities. The September 10, 2007 letter included a schedule of recordings that were being exploited on and via Multiply, including the Multiply URL for the particular infringing file as it existed at the time the EMI Music Plaintiffs discovered the infringement. (*See* Ex. W.) The letter was sent by registered mail, overnight courier, and e-mail. Multiply did not respond to the letter. Rather, it apparently, selectively, cancelled the accounts of a few, but not all, of the users whose Multiply-hosted pages or subsites were offering the infringing material. The accounts of the other users were not cancelled, and the infringements by such users on and via Multiply, including

infringements of the particular recordings listed on the schedule to EMI's September 10,

2007 letter, continued unabated and, in fact, continue to this day.

54.    Multiply deliberately refuses to do to take any meaningful steps to deter the

rampant infringing activity readily apparent on its site, even though it has the ability to do

so.   Indeed, Multiply admits in its Terms of Service and Use that it has the ability to

monitor the activity of its users:

> You understand and agree that Multiply may, but is not obligated to,
> review and delete any Member Content that, in the sole judgment of
> Multiply, violate this Agreement or which might be offensive, illegal, or
> that might violate the rights, harm, or threaten the safety of Multiply,
> Multiply's Members or users, or the public, without notice.   Multiply
> assumes no responsibility for monitoring the content posted on the Web
> site by Members or the conduct of its Members.

(*See* Ex. X.)

55.    Although Multiply's Terms of Use also state that copyright holders can

submit so-called DMCA "take down" notices requesting removal of infringing material,

Multiply is well aware that, in the case of Multiply, takedown notices are essentially

meaningless, for several reasons.

56.    First, it is extremely difficult for copyright holders (who have nowhere

near the technological access of Defendant), including EMI, to identify all of the different

infringements of their copyrights taking place on Multiply.   The only way for copyright

holders to locate infringing activity is to use Multiply's "search" feature in an effort to

canvas the millions of files on the Multiply sites and services in order to locate their

copyrighted works.   As a result, in order to locate material that infringes their copyrights,

a copyright owner would have to construct countless "searches" designed to account for

different names, titles, nicknames, and spellings that could be chosen by the users who uploaded the material.

57. Second, the recordings and videos being unlawfully exploited on and via Multiply are not identified by copyright owner or registration number, but rather by the uploader's choice of descriptive terms, or "tags," to describe the content of the file. Those "tags" may, in fact, bear little or no relation to the recording or video uploaded or the work that recording or video infringes. Thus, even those searches described above will not necessarily uncover all of the infringements.

58. Third, even if a copyright owner did somehow locate each and every infringement of its copyrights occurring at any given moment on Multiply, it would still not be enough. Users are constantly uploading new infringing copies of recordings and videos. Thus, Multiply would have copyright owners engage in a game of digital copyright "Whack-A-Mole," whereby a copyright owner would give notice to Multiply of a particular file embodying a copyrighted work, and, while it waited for that file to be removed or blocked by Multiply, six new files embodying that same copyrighted work would be posted.

59. Moreover, in this regard, we understand that the URLs for digital content files that may be downloaded from Multiply are, by Multiply's design, not persistent. In other words, the URL for a particular file changes on a regular basis such that the file cannot be located, accessed and/or downloaded by pasting or typing what was, at least at one time, the URL of such file, in a browser. Nevertheless, the file continues to exist on and remains accessible from Multiply's servers via the Multiply sites and services, and can be located by conducting searches on or returning directly to a known Multiply page

or sub-site, as described above. Thus, providing Multiply with a list of non-persistent URLs embodying infringing files is essentially meaningless.

60.    Note however that, if Multiply were to employ available content recognition and filtering solutions, such solutions could uncover most, if not all, digital files embodying recordings or videos that infringe EMI's copyrights, filter out or prevent access to such files, and prevent other files embodying those same recordings or videos from being uploaded in the future. Multiply is unwilling to employ such software or to take other meaningful steps to deter the rampant infringing activity that is readily apparent on its sites and services because to do so would have a negative impact on its advertising and other revenues and other value achieved through the large volume of traffic on its sites and services.

## FIRST CLAIM FOR RELIEF

### (Direct Copyright Infringement)

61.    Plaintiffs repeat and reallege each and every allegation contained in other paragraphs of the complaint.

62.    Defendant has directly infringed the EMI Music Plaintiffs' copyrights in EMI Recordings, and the EMI Publishing Plaintiffs' copyrights in EMI Compositions, including but not limited to those recordings and compositions listed on Exhibits A and B hereto. Defendant has reproduced, adapted, distributed, and/or publicly performed, without authorization, sound recordings and audiovisual works embodying such EMI Recordings and EMI Compositions, in violation of the U.S. Copyright Act, 17 U.S.C. §§101 *et. seq.*

63.    Defendant has further directly infringed the state common law copyrights of Plaintiff Capitol Records Inc. in Pre-1972 Recordings, including but not limited to

those recordings listed and so designated on Exhibit A hereto. Defendant has reproduced, adapted, distributed, and/or publicly performed, without authorization, sound recordings and audiovisual works embodying such Pre-1972 Recordings, in violation of state law.

64. The infringement of each such work is a separate and distinct act of infringement.

65. These acts of infringement were willful, intentional, and purposeful and in disregard of and with indifference to the rights of Plaintiffs.

66. As a direct and proximate result of the infringements by Defendant, Plaintiffs are entitled to damages and Defendant's profits in amounts to be proven at trial which are not currently ascertainable. If necessary, Plaintiffs will seek leave to amend this complaint to state the full amount of such damages and profits when such amounts have been ascertained.

67. Alternatively, with respect to the EMI Recordings and the EMI Compositions, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C.§504(c).

68. Plaintiffs further are entitled to attorneys' fees and costs pursuant to 17 U.S.C. §505.

69. As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to infringe Plaintiffs' rights in EMI

Recordings, Pre-1972 Recordings, and EMI Compositions. Plaintiffs are entitled to preliminary and permanent injunctive relief.

## SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement)

70. Plaintiffs repeat and reallege each and every allegation contained in other paragraphs of the complaint.

71. Defendant has contributed to the infringement of the copyrights of the EMI Music Plaintiffs in EMI Recordings, of Capitol Records, Inc. in Pre-1972 Recordings, and of the EMI Publishing Plaintiffs in EMI Compositions, including but not limited to those recordings and compositions listed on Exhibits A and B hereto.

72. Defendant provides the site, means, and facilities for the infringement of, and has otherwise knowingly and systematically contributed to the infringement of, sound recordings and audiovisual works embodying such EMI Recordings, Pre-1972 Recordings and/or EMI Compositions. Such infringement takes place each time an unauthorized copy of such a sound recording or audiovisual work is copied and uploaded to Multiply, images from such an audiovisual work are publicly displayed on Multiply, and/or a Multiply user accesses and streams, publicly performs, copies, forwards or otherwise transmits such a sound recording or audiovisual work. Each and every one of these infringements is encouraged, and made possible and facilitated by Defendant.

73. Such acts have been undertaken with full knowledge, actual and constructive, of the infringing activities alleged herein.

74. The infringement of each such work is a separate and distinct act of infringement.

75.    These acts of infringement were willful, intentional, and purposeful and in disregard of and with indifference to the rights of Plaintiffs.

76.    As a direct and proximate result of the infringements by Defendant, Plaintiffs are entitled to damages and Defendant's profits in amounts to be proven at trial which are not currently ascertainable. If necessary, Plaintiffs will seek leave to amend this complaint to state the full amount of such damages and profits when such amounts have been ascertained.

77.    Alternatively, with respect to the EMI Recordings and the EMI Compositions, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

78.    Plaintiffs further are entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

79.    As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to contribute to the infringement of Plaintiffs' rights in EMI Recordings, Pre-1972 Recordings, and EMI Compositions. Plaintiffs are entitled to preliminary and permanent injunctive relief.

### THIRD CLAIM FOR RELIEF
#### (Vicarious Copyright Infringement)

80.    Plaintiffs repeat and reallege each and every allegation contained in other paragraphs of the complaint.

81.    Defendant has vicariously infringed the copyrights of the EMI Music Plaintiffs in EMI Recordings, of Capitol Records, Inc. in Pre-1972 Recordings, and of the EMI Publishing Plaintiffs in EMI Compositions, including but not limited to those recordings and compositions listed on Exhibits A and B hereto.

82.    Defendant has the right and the ability to supervise and/or control the infringing conduct of Multiply's users. Defendant has refused to exercise such supervision and/or control over Multiply's users to the extent required under law. As a direct and proximate result of such refusal, Multiply's users have infringed and continue to infringe Plaintiffs' copyrights in such EMI Recordings, Pre-1972 Recordings, and EMI Compositions, including by reproducing, adapting, distributing, and publicly performing such EMI Recordings, Pre-1972 Recordings, and EMI Compositions.

83.    Defendant derives a direct financial benefit from the "draw" of infringing EMI Recordings, Pre-1972 Recordings, and EMI Compositions, including, without limitation, from advertising revenue and from an increase in user traffic and in the value of Defendant's business resulting therefrom. Multiply also purportedly derives, or plans to derive, revenue from non-advertising sources, including subscription upgrades that allow users to "share" more infringing material.

84.    The infringement of each such work is a separate and distinct act of infringement.

85.    These acts of infringement were willful, intentional, and purposeful and in disregard of and with indifference to the rights of Plaintiffs.

86.    As a direct and proximate result of the infringements by Defendant, Plaintiffs are entitled to damages and Defendant's profits in amounts to be proven at trial

which are not currently ascertainable. If necessary, Plaintiffs will seek leave to amend this complaint to state the full amount of such damages and profits when such amounts have been ascertained.

87.    Alternatively, with respect to the EMI Recordings and the EMI Compositions, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

88.    Plaintiffs further are entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

89.    As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to vicariously infringe Plaintiffs' rights in EMI Recordings, Pre-1972 Recordings, and EMI Compositions. Plaintiffs are entitled to preliminary and permanent injunctive relief.

## FOURTH CLAIM FOR RELIEF
### (Inducing Copyright Infringement)

90.    Plaintiffs repeat and reallege each and every allegation contained in other paragraphs of the complaint.

91.    Defendant has induced others to infringe the copyrights of the EMI Music Plaintiffs in EMI Recordings, of Capitol Records, Inc. in Pre-1972 Recordings, and of the EMI Publishing Plaintiffs in EMI Compositions including but not limited to those recordings and compositions listed on Exhibits A and B hereto.

92.    Defendant has designed, distributed, and made available technology, devices and services with the object and intent of promoting their use to infringe copyrighted materials.  As a direct and proximate result of such inducement, users of Defendant's technology, devices and services have infringed Plaintiffs' copyrights in such EMI Recordings, Pre-1972 Recordings, and EMI Compositions, including by reproducing, adapting, distributing, and publicly performing such EMI Recordings, Pre-1972 Recordings, and EMI Compositions.

93.    The infringement of each such work is a separate and distinct act of infringement.

94.    These acts of infringement were willful, intentional, and purposeful and in disregard of and with indifference to the rights of Plaintiffs.

95.    As a direct and proximate result of the infringements by Defendant, Plaintiffs are entitled to damages and Defendant's profits in amounts to be proven at trial which are not currently ascertainable.  If necessary, Plaintiffs will seek leave to amend this complaint to state the full amount of such damages and profits when such amounts have been ascertained.

96.    Alternatively, with respect to the EMI Recordings and the EMI Compositions, Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

97.    Plaintiffs further are entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

98.    As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to induce infringement of Plaintiffs' rights in EMI Recordings, Pre-1972 Recordings, and EMI Compositions. Plaintiffs are entitled to preliminary and permanent injunctive relief.

### FIFTH CLAIM FOR RELIEF
#### (Unfair Competition as to Pre-1972 Recordings)

99.    Plaintiffs repeat and reallege each and every allegation contained in other paragraphs of the complaint.

100.    Defendants are violating the rights of Plaintiff Capitol Records, Inc. in Pre-1972 Recordings, including but not limited to those recordings listed and so designated on Exhibit A hereto, and are guilty of unfair competition under the common law of the State of New York. By performing, reproducing, distributing, and otherwise commercially exploiting unauthorized copies of such Pre-1972 Recordings, Defendants compete directly with Capitol Records, Inc. and its lawful licensees, and further take advantage of and undermine the substantial creative and financial investment of Capitol Records, Inc. in such Pre-1972 Recordings. Defendants are willfully, wantonly and unfairly appropriating the rights of Capitol Records, Inc. in and to such Pre-1972 Recordings for their own commercial benefit.

101.    As a direct and proximate result of the foregoing acts and conduct, Capitol Records, Inc. is entitled to compensatory damages in such amounts as will be proven at trial, as well as punitive damages. If necessary, Capitol Records, Inc. will seek leave to

amend this complaint to state the full amount of such damages when such amounts have been ascertained.

102.    As a direct and proximate result of the foregoing acts and conduct, Capitol Records, Inc. has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendant will continue to cause Capitol Records, Inc. great and irreparable injury that cannot fully be compensated or measured in money damages. Capitol Records, Inc. has no adequate remedy at law and is entitled to preliminary and permanent injunctive relief prohibiting Defendant from further violating its rights in the Pre-1972 Recordings.

* * *

WHEREFORE, Plaintiffs pray for judgment against Defendant, as follows:

1.    For a declaration that Defendant has directly and/or secondarily infringed Plaintiffs' copyrights under the Copyright Act and the common law of the State of New York;

2.    For a declaration that such infringement is willful;

3.    For a declaration that Defendant has engaged in unfair competition and other violations of New York state law;

4.    For a preliminary and permanent injunction enjoining Defendant and Defendant's agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from directly infringing, and/or aiding, encouraging, enabling, inducing, causing, materially contributing to, or otherwise facilitating the infringement of, any of

Plaintiffs' copyrights or exclusive rights protected by the Copyright Act or common law, whether now in existence or hereafter created;

5. On the First through Fourth Claims for Relief, all damages to which Plaintiffs may be entitled, including Defendant's profits, in such amounts as may be found, or, in the alternative and at Plaintiffs' election, for statutory damages in the maximum amount allowed by law;

6. On the Fifth Claim for Relief, compensatory damages in such amounts as will be proven at trial, as well as punitive damages;

7. For Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505;

8. For prejudgment interest according to law; and

9. For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       December 18, 2007

*FSciBiLiA*

Donald S. Zakarin (DZ 6355)
(dzakarin@pryorcashman.com)
Frank P. Scibilia (FS 3894)
(fscibilia@pryorcashman.com)
PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
Phone: (212) 421-4100
*Attorneys for Plaintiffs*