UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, INC.; CAROLINE RECORDS, INC.; EMI CHRISTIAN MUSIC GROUP INC.; VIRGIN RECORDS AMERICA, INC.; COLGEMS-EMI MUSIC INC.; EMI APRIL MUSIC INC.; EMI BLACKWOOD MUSIC; EMI FULL KEEL MUSIC; EMI GROVE PARK MUSIC, INC.; EMI LONGITUDE MUSIC; EMI ROBBINS CATALOG INC.; EMI U CATALOG, INC.; EMI VIRGIN MUSIC, INC.; EMI VIRGIN SONGS, INC.; EMI WATERFORD MUSIC, INC., <br><br>                    *Plaintiffs,* <br><br> v. <br><br> MULTIPLY, INC. and PETER PEZARIS, <br><br>                    *Defendants.* | No. 07 Civ. 11357 (SHS)(MHD) |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF
DEFENDANT PETER PEZARIS TO DISMISS THE AMENDED COMPLAINT**

PRYOR CASHMAN LLP
410 Park Avenue
New York, New York 10022
Phone: (212) 421-4100

*Attorneys for Plaintiffs*

*Of Counsel:*
   Donald S. Zakarin (dzakarin@pryorcashman.com)
   Frank P. Scibilia (fscibilia@pryorcashman.com)
   Suyin So (sso@pryorcashman.com)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 4

ARGUMENT ..................................................................................................... 6

   I.   PLAINTIFFS' ALLEGATIONS CONSTITUTE
       A *PRIMA FACIE* SHOWING OF JURISDICTION ............................................ 6

       A.  Standards on Motion ............................................................................. 6

       B.  Plaintiffs Have Adequately Alleged That This Court
           Has Long Arm Jurisdiction Over Pezaris Under CPLR 302 ....................... 7

           1.  Plaintiffs Have Specifically Alleged All Of
               The *Prima Facie* Elements Of Each Of Their
               Infringment Claims Directly Against Pezaris ...................................... 7

           2.  The Allegations Against Pezaris Suffice To Make
               Out A *Prima Facie* Showing Of Long Arm Jurisdiction ...................... 9

           3.  The Allegations Regarding Pezaris' Knowledge And
               Control Of, Consent To, And Financial Benefit From,
               *Multiply's* Infringing Acts, Further Suffice To Make
               Out A *Prima Facie* Showing Of Long Arm Jurisdiction ..................... 13

       C.  Asserting Jurisdiction Over Pezaris Does Not Violate Due Process ......... 18

   II.  IN THE ALTERNATIVE, PLAINTIFFS ARE
       ENTITLED TO LIMITED DISCOVERY ON THE
       FACTS REGARDING PERSONAL JURISDICTION ....................................... 20

   III.  PEZARIS' VENUE OR *FORUM NON CONVENIENS*
        ARGUMENTS ARE MISPLACED ............................................................ 22

CONCLUSION ................................................................................................ 24

## TABLE OF AUTHORITIES

**CASES**                                                                                **PAGE(s)**

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985)................................................................................................19

*Capitol Records, Inc. v. Kuang Dyi Co.,*
    03 Civ. 0520  2004 U.S. Dist. LEXIS 3305 (S.D.N.Y. Mar. 1, 2004) ........................20, 22

*Citigroup Inc. v. City Holding Co.,*
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)....................................................................10, 11, 12

*Colour & Design v. U.S. Vinyl Mfg. Corp.,*
    04 Civ. 8332  2005 U.S. Dist. LEXIS 10964 (S.D.N.Y. May 19, 2005)................... *passim*

*Cosmetech International LLC v. Der Kwei Enterprise,*
    943 F. Supp. 311 (S.D.N.Y. 1996) ...............................................................................6, 20

*Design Tex Group, Inc. v. U.S. Vinyl Manufacturing Corp., 04 Civ.5002 (JSR),*
    2005 U.S. Dist. LEXIS 2143 (S.D.N.Y. Feb. 14, 2005)...........................................4, 12, 14

*Editorial Musical Latino Americana, S.A., v. Maritime International Records, Inc.,*
    829 F. Supp. 62 (S.D.N.Y. 1993) ...............................................................................11, 14, 19

*Elektra Entertainment Group, Inc. v. Santangelo,*
    No. 05CV2414, 2005 U.S. Dist. LEXIS 30388 (S.D.N.Y. Nov. 28, 2005).....................17

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945)................................................................................................19

*Kinetic Instruments, Inc. v. Craig J. Lares,*
    802 F. Supp. 976 (S.D.N.Y. 1992) (citation omitted).................................................16, 17

*Kiobel v. Royal Dutch Petroleum Co.,*
    Nos. 02 Civ. 7618 (KMW)(HBP), 04 Civ. 2665 (KMW)(HBP), 2008 WL 591869
    (S.D.N.Y. Mar. 4, 2008) .........................................................................................21

*Kreutter v. McFadden Oil Corp.,*
    71 N.Y.2d 460, 527 N.Y.S.2d 195 (1988) (observing that CPLR 302(a)(1)....................11

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,*
    918 F.2d 1039, 1041 (2d Cir. 1990) (Sprizzo, J.)............................................................21

*Lauratex Textile Corp. v. Allton Knitting Mills Inc.,*
    517 F. Supp. 900 (S.D.N.Y. 1981) ...............................................................................14

**CASES**                                                                                      **PAGE(s)**

*Lechner v. Marco-Domo Internationales Interieur Gmbh,*
  03 Civ. 5664  2005 U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ...........................20

*Mattel, Inc. v. Adventure Apparel,*
  00 Civ. 4085 (RWS), 2001 U.S. Dist. LEXIS 3179 (S.D.N.Y. Mar. 15, 2001)
  (Sweet, J.)...............................................................................................................10

*Maverick Recording Co. v. Goldshteyn,*
  No. 05CV4523, 2006 U.S. Dist. LEXIS 52422 (E.D.N.Y. July 31, 2006)......................17

*McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.,*
  375 F. Supp. 2d 252 (S.D.N.Y. 2005)......................................................................11, 12

*Merck & Co. v. Mediplan Health Consulting,*
  425 F. Supp. 2d 402 (S.D.N.Y. 2006).............................................................................7

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.,*
  84 F.3d 560 (2d Cir. 1996)............................................................................................21

*Moneygram Payment System, Inc. v. Consorcio Oriental, S.A.,*
  No. 05CV10773, 2007 U.S. Dist. LEXIS 37374 (S.D.N.Y. May 21, 2007) ...................22

*Ontel Products v. Project Strategies Corp.,*
  899 F. Supp. 1144 (S.D.N.Y. 1995)..............................................................................15

*Pilates Inc. v. Current Concepts,*
  No. 96 Civ. 0043 (MGC), 1996 WL 599654 (S.D.N.Y. Oct. 18, 1996)...........................14

*Retail Software Services, Inc. v. Lashlee,*
  854 F.2d 18 (2d Cir. 1988)............................................................................................15

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.,*
  256 F. Supp. 399 (S.D.N.Y. 1966) ...............................................................................14

*Televisa, S.A. de C.V. v. Koch Lorber Films,*
  382 F. Supp. 2d 631 (S.D.N.Y. 2005).............................................................................23

*Warner Brothers Entertainment Inc. v. Ideal World Direct,*
  516 F. Supp. 2d 261 (S.D.N.Y. 2007)......................................................................*passim*

**STATUTES**                                                              **PAGE(s)**

CPLR 301..................................................................................................................21, 22

CPLR 302................................................................................................................*passim*

CPLR 302(a) ....................................................................................................................9

CPLR 302(a)(1)...................................................................................................2, 10, 11, 13

CPLR 302(a)(2)...................................................................................................2, 11, 12, 13

CPLR 302(a)(3)(ii)..................................................................................................2, 13

Fed. R. Civ. P. 12(b)(2)........................................................................................1, 6, 22

The EMI Music Plaintiffs and the EMI Publishing Plaintiffs[1] (collectively, "Plaintiffs" or "EMI"), by and through their attorneys Pryor Cashman LLP, hereby respectfully submit this Memorandum of Law in opposition to the Motion of Defendant Peter Pezaris ("Pezaris") to Dismiss the Amended Complaint filed February 14, 2008, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction (the "Motion"). For the following reasons, the Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

On a pre-discovery motion to dismiss pursuant to Rule 12(b)(2), a plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction. Here, Plaintiffs have made a *prima facie* showing that this Court has long arm jurisdiction over Pezaris under CPLR 302.

Pezaris contends that the allegations forming the basis for long-arm jurisdiction over him are confined to a "single, conclusory paragraph" of the Amended Complaint. He is wrong. The Amended Complaint asserts each of the *prima facie* elements of direct, contributory and vicarious copyright infringement, inducement of copyright infringement, and unfair competition with respect to pre-1972 sound recordings against *both* Pezaris *and* the corporate defendant Multiply, Inc. ("Multiply," which also refers to the website Multiply.com). Plaintiffs are not merely relying on *Multiply's* infringing acts to confer jurisdiction against Pezaris, but on the acts

---

[1]    The EMI Music Plaintiffs are Capitol Records, Inc., Caroline Records, Inc., EMI Christian Music Group Inc. and Virgin Records America, Inc. The EMI Music Plaintiffs own sound recordings that have been infringed by the Defendants. The EMI Publishing Plaintiffs are Colgems-EMI Music Inc., EMI April Music Inc., EMI Blackwood Music, EMI Full Keel Music, EMI Grove Park Music, Inc., EMI Longitude Music, EMI Robbins Catalog Inc., EMI U Catalog, Inc., EMI Virgin Music, Inc., EMI Virgin Songs, Inc., and EMI Waterford Music, Inc. The EMI Publishing Plaintiffs all own or control musical compositions that have been infringed by the Defendants.

Note that, effective April 1, 2008, Capitol Records, Inc. converted from a Delaware corporation into a Delaware limited liability company, and its name was changed to Capitol Records, LLC. All of the copyrights owned by Capitol Records, Inc. continue to be owned by Capitol Records, LLC. This conversion does not affect Plaintiffs' Rule 7.1 Statement. All other Plaintiffs remain the same. Plaintiffs will, with the Court's permission, amend the Amended Complaint to effectuate this technical change.

of *Pezaris himself*. Indeed, these facts sufficiently allege that Pezaris himself is a massive copyright infringer subject to long arm jurisdiction, and it is precisely for this reason that the Plaintiffs named him as a defendant, and not merely because he is the principal of Multiply, or because they want to "inconvenience" him.

The Amended Complaint sufficiently alleges that Pezaris has transacted business in New York, including by knowingly and repeatedly transmitting computer files to customers in New York, thereby satisfying CPLR 302(a)(1). Because copyright infringement is a tort, each such transmission by Pezaris of an infringing file to a user in New York -- as well each act of permitting, encouraging, and enabling New York users to upload, download, stream, view and/or listen to an infringing file -- constitutes the commission of a tortious act within the state sufficient to vest this Court with personal jurisdiction over him, thereby satisfying CPLR 302(a)(2). Given that the Plaintiffs are based in New York, those same acts -- regardless of where they may have taken place -- constitute the commission of a tortious act which have caused injury here in New York. Pezaris expected or should reasonably have expected that his unauthorized hosting of copyrighted sound recordings and musical compositions on Multiply's computer servers, his streaming, transmitting and/or distributing that content to others, and his providing the site, means, and facilities for others to infringe that content, with full knowledge of those infringing activities, would have consequences in New York, where most of the major record labels and music publishers, including EMI, may be found. Thus, jurisdiction pursuant to CPLR 302(a)(3)(ii) is also satisfied.

In addition to the allegations regarding the infringing activity of Pezaris himself -- which Pezaris utterly ignores -- the Amended Complaint also, indisputably, contains allegations regarding the infringing activity of *Multiply* that subjects that corporate entity to personal

jurisdiction. Indeed, Multiply does not contest that jurisdiction. Because Multiply's infringing acts were done with the knowledge and consent of, and under the control of, Pezaris, and because he received a financial benefit therefrom, all as alleged in the Amended Complaint, Pezaris may be held liable for those acts, and personal jurisdiction over Multiply therefore equally confers personal jurisdiction over Pezaris.

EMI, through the Amended Complaint, has thus established a *prima facie* showing of Pezaris' jurisdiction before this Court at this pre-discovery stage of litigation. Pezaris' declaration only serves to further this showing. Pezaris admits that he has come to New York on Multiply's business.[2] He admits that there have been at least 125,000 users of Multiply in New York. His declaration does not really refute jurisdiction. It merely suggests that despite the massive infringement conducted in New York, it would be more convenient for him to litigate this case in Florida.

EMI submits that the Amended Complaint sets forth more than sufficient facts to sustain personal jurisdiction over Pezaris. Nevertheless, in the event that the Court should find that there are factual questions concerning whether Pezaris is amenable to the jurisdiction of this Court, EMI should be afforded limited discovery on the jurisdictional issue.

---

[2]    Pezaris carefully parses his activities on behalf of Multiply in New York, stating only that his work in New York allegedly did not pertain to the infringing activities. But they admittedly did pertain to Multiply's transaction of business in New York and they admittedly pertained to the transaction of business in New York by Pezaris on behalf of Multiply.

## STATEMENT OF FACTS[3]

Pezaris is the founder, President and Chief Executive Officer of Multiply. (Am. Compl. ¶ 39, and Ex. C; Pezaris Decl. ¶ 1.) Multiply and Pezaris operate an internet and mobile site and service located at http://multiply.com. (Am. Compl. ¶ 1; Pezaris Decl. ¶ 2.) Through that site and service, Multiply and Pezaris have directly infringed EMI's copyrights (and the EMI Music Plaintiffs' common law rights in pre-1972 sound recordings) by hosting infringing content on Multiply's computer servers, and by streaming, transmitting and/or distributing that content to others, including to at least 125,000 individuals in New York. (Am. Compl. ¶¶ 1; 29; 40; 63-71; 101-104; Pezaris Decl. ¶ 4.). Multiply and Pezaris have further contributed to the infringement of EMI's copyrights by users of the Multiply site and service -- including by New York users -- by providing the site, means, and facilities for such infringing activities, with full knowledge of those infringing activities. (Am. Compl. ¶¶ 1; 7; 29; 43; 54; 72-81.) Multiply and Pezaris have also vicariously infringed EMI's copyrights by refusing to exercise their right and ability to supervise and/or control the conduct of Multiply users (including users in New York) and by deriving a direct financial benefit from the "draw" of the infringing material, including by refusing to take steps to deter those activities when they have the ability to do so. (Am. Compl. ¶¶ 1; 5; 29; 56; 82-91). Finally, Multiply and Pezaris have induced others (including individuals in New York) to infringe EMI's copyrights by designing, distributing and making available technology, devices and services with the object and intent of promoting their use to infringe copyrighted materials. (Am. Compl. ¶¶ 43, 49-53; 92-100)

---

[3]     The facts set forth below are taken from the Amended Complaint ("Am. Compl.") and the Declaration of Peter Pezaris ("Pezaris Decl.") submitted in connection with this Motion. "On a motion to dismiss for lack of jurisdiction, the Court may consider affidavits and other materials outside the pleadings, while still resolving all doubts and factual disputes in favor of the plaintiff." *Design Tex Group, Inc. v. U.S. Vinyl Mfg. Corp.*, 04 Civ.5002 (JSR), 2005 U.S. Dist. LEXIS 2143, at *3 n. 1 (S.D.N.Y. Feb. 14, 2005) (Rakoff, J.) (citation omitted).

Pezaris has contributed to and does contribute to, and has benefited and will continue to benefit financially from, Multiply's actions. (Am. Comp. ¶¶ 1, 39.) Those actions are made under the direction, supervision, and/or control of Pezaris, and with Pezaris' knowledge. (*Id.*) Pezaris does not deny that he is at least substantially in control of the operations and activities of Multiply. In fact, he admits that he sits on Multiply's Board of Directors, which currently has five members. (Pezaris Decl. ¶12.) He admits that the Board of Directors meets regularly and oversees the business of Multiply.[4] (*Id.* ¶ 2.) And he admits that he is also a member of Multiply's four-member senior management team that makes the "[d]ay-to-day decisions about website design features." (*Id.* ¶ 13.)

Pezaris is also an investor in Multiply. (Am. Compl. ¶ 39.) He admittedly owns over 26% of Multiply's outstanding stock. (Pezaris Decl. ¶ 12.)

Multiply has an office in New York (*id.* ¶ 11; Am. Compl. ¶ 24), which Pezaris visits when he travels to New York to "conduct certain Multiply business," which he has done on "several occasions." (Pezaris Decl. ¶ 11.)

Multiply's registered user base has grown over the past four years, with a current base of approximately 8 million registered users. (*Id.* ¶ 4.) "Although Multiply is unable to be absolutely certain of users' locations, it does request as part of the registration process that users indicate their state or country of residence." (Memorandum of Law In Support of Pezaris' Motion To Dismiss ("Pezaris Mem.") at 2-3, citing Pezaris Decl. ¶ 4.) "Approximately 125,000 users have indicated that they reside in New York." (*Id.*)

---

[4] There are apparently venture capitalists who have invested millions of dollars in Multiply who sit on Multiply's Board of Directors. The extent to which they influence or guide the activities of Multiply remains to be ascertained and EMI has advised Multiply and Pezaris that, if the facts warrant, these venture capital investors may be subject to suit as infringers as well.

Multiply users, including those located in New York, are drawn to the copyrighted content -- including Plaintiffs' content -- that is reproduced and distributed on and via Multiply.com and the Multiply-hosted pages, profiles or subsites created by Multiply users, including by users in New York. As a result, Multiply and Pezaris have been able to sell advertising placements on Multiply and on those Multiply-hosted pages, profiles and subsites, garnering significant revenue for themselves. (Am. Compl. ¶¶ 5, 29.)

## ARGUMENT

**I. PLAINTIFFS' ALLEGATIONS CONSTITUTE A *PRIMA FACIE* SHOWING OF JURISDICTION**

### A.  Standards on Motion

On this pre-discovery motion to dismiss pursuant to Rule 12(b)(2), Plaintiffs need only set forth *prima facie* evidence of personal jurisdiction. *Cosmetech Int'l LLC v. Der Kwei Enter.*, 943 F. Supp. 311, 316-317 (S.D.N.Y. 1996) (Sweet, J.) (finding jurisdiction over Taiwanese corporate defendant pursuant to CPLR 302); *Warner Bros. Entertainment Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 265 (S.D.N.Y. 2007) (Pauley, J.) ("'If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion . . . the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction'"), *quoting Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). This court must construe all allegations in the light most favorable to the plaintiff, resolving all doubts in plaintiff's favor. *Id.; Colour & Design v. U.S. Vinyl Mfg. Corp.*, 04 Civ. 8332 (MBM), 2005 U.S. Dist. LEXIS 10964, at *2 (S.D.N.Y. May 19, 2005) (Mukasey, J.) (denying motion of corporation and its president and CEO to dismiss, where plaintiff had made *prima facie* showing of jurisdiction).

In this federal copyright case, the law of New York as the forum state controls whether Pezaris is susceptible to personal jurisdiction. *Warner Bros. Entm't Inc.*, 516 F. Supp. 2d at 265; *Colour & Design*, 2005 U.S. Dist. LEXIS 10964, at *4. As Defendant correctly notes, this Court applies a two-part analysis to determine whether to exercise personal jurisdiction over a non-domiciliary; the first part analyzes the existence of jurisdiction under New York State's law, and the second part probes whether the exercise of jurisdiction under state law satisfies federal due process requirements. (Pezaris Mem. at 3-4, *citing Merck & Co. v. Mediplan Health Consulting*, 425 F. Supp. 2d 402, 419 (S.D.N.Y. 2006).) For the reasons discussed below, both prongs are satisfied here with respect to Pezaris.

### B.    Plaintiffs Have Adequately Alleged That This Court Has Long Arm Jurisdiction Over Pezaris Under CPLR 302

#### 1.    Plaintiffs Have Specifically Alleged All Of The *Prima Facie* Elements Of Each Of Their Infringment Claims Directly Against Pezaris

Plaintiffs' primary bases for asserting jurisdiction over Pezaris lie in CPLR 302 -- New York's "long arm" statute. In large measure, Pezaris' motion rests on a fundamental misconception; namely, that "Plaintiffs' allegations regarding the potential for CPLR 302 jurisdiction over Pezaris are limited to a single, conclusory paragraph of the Amended Complaint." (Pezaris Mem. at 6, citing Am. Compl. ¶ 39.) On the contrary, in amending the Complaint to join Pezaris as a defendant, Plaintiffs carefully and extensively amended their pleadings to assert their claims against Pezaris and Multiply. Pezaris either overlooked these amended paragraphs of the Amended Complaint or, recognizing that acknowledging the extent of the allegations against him would defeat his motion, elected simply to ignore them.

The Amended Complaint asserts each of the *prima facie* elements of direct, contributory and vicarious copyright infringement, inducement of copyright infringement, and unfair

competition with respect to pre-1972 sound recordings, against *each* of the Defendants, *including Pezaris*. Thus, Plaintiffs have alleged that "Defendant*s*" -- which are defined to include *both* Multiply and Pezaris (*see* Preamble to Am. Compl.) -- have, *inter alia*:

- directly infringed EMI's copyrights (and EMI's common law rights in pre-1972 sound recordings) by hosting infringing content on Multiply's computer servers, and by streaming, transmitting and/or distributing that content to others (*see* Am. Compl. ¶¶ 1; 29; 40; 63-71; 101-104);

- contributed to the infringement of EMI's copyrights by users of the Multiply site and services, including by providing the site, means, and facilities for such infringing activities, with full knowledge of those infringing activities (*see* Am. Compl. ¶¶ 1; 7; 29; 43; 54; 72-81);

- vicariously infringed EMI's copyrights by refusing to exercise their right and ability to supervise and/or control the conduct of Multiply users and deriving a direct financial benefit from the "draw" of the infringing material, including by refusing to take steps to deter those activities when they have the ability to do so (*see* Am. Compl. ¶¶ 1; 5; 29; 56; 82-91); and

- induced others to infringe EMI's copyrights by designing, distributing and making available technology, devices and services with the object and intent of promoting their use to infringe copyrighted materials (*see* Am. Compl. ¶¶ 43, 49-53; 92-100)

When the Amended Complaint is read in its entirety (and without ignoring the "s" in Defendant*s* as Pezaris conveniently has done), it is clear that the allegations against Pezaris are far from "general and conclusory." (See Defs. Mem. at 6-8.)   Indeed, since it is undisputed that they are sufficient to confer jurisdiction against Multiply, these same allegations must, perforce, be equally sufficient to confer jurisdiction against Pezaris.  Furthermore, a proper reading of the Amended Complaint makes clear that Plaintiffs are not relying merely on *Multiply's* infringing acts to confer jurisdiction against Pezaris (although, as discussed in Point I.B.3, below, the fact that Multiply's infringing acts were done with the knowledge and consent of, and under the control of, Pezaris, and that he received a financial benefit therefrom, all as alleged in the

Amended Complaint, is an alternative and independently sufficient basis for establishing jurisdiction over Pezaris), but on the acts of *Pezaris himself*.

### 2. The Allegations Against Pezaris Suffice To Make Out A *Prima Facie* Showing Of Long Arm Jurisdiction

The law is clear that the allegations summarized above, construed in the light most favorable to Plaintiffs, are more than sufficient to make out a *prima facie* showing of long arm jurisdiction over Pezaris (as well as over Multiply).  CPLR 302(a) provides for exercise of personal jurisdiction over any non-domiciliary who, in person or through an agent:

1.  transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.  commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.  commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

    (i)  regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    (ii)  expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4.  owns, uses or possesses any real property situated within the state.

CPLR §302 (McKinney 2001).

The allegations against Pezaris (and those against Multiply) satisfy each of the first three prongs.

*First,* the Amended Complaint sufficiently alleges that Pezaris has transacted business in New York.  In *Warner Bros. Entertainment Inc.,* 516 F. Supp. 2d 261, plaintiffs asserted contributory copyright infringement claims against defendants Ideal World Direct and Peter

Armstrong, who operated the websites Flixs.net and IShareIt.com. Those sites transmitted infringing files to users, provided users with software that contributed to the download and display of unauthorized copies of copyrighted films and other materials, and granted access to "user guides" which provided links to third-party sites from which copyrighted films could be viewed and downloaded, all without authorization. *Id.* at 264, 267-68. On Ideal World's motion to dismiss for lack of personal jurisdiction, Judge Pauley held that a defendant that "knowingly and repeatedly transmit[s] computer files to customers" in New York will be subject to personal jurisdiction in New York under CPLR 302(a)(1). *Id.* at 265 (citations and quotations omitted). After engaging in jurisdictional discovery, plaintiffs submitted evidence that Ideal World had "engaged in at least 379 such transactions with residents of New York." *Id.* at 266. Judge Pauley concluded that those transactions subjected Ideal World to personal jurisdiction. *See also Mattel, Inc. v. Adventure Apparel,* 00 Civ. 4085 (RWS), 2001 U.S. Dist. LEXIS 3179, at *9 (S.D.N.Y. Mar. 15, 2001) (Sweet, J.) (interactive website that consummated transactions with New York customers was subject to jurisdiction under CPLR 302(a)(1)); *Citigroup Inc. v. City Holding Co.,* 97 F. Supp. 2d 549, 565-66 (S.D.N.Y. 2000) (Sweet, J.) (same).

Here, the Amended Complaint alleges that Pezaris has engaged in virtually the same acts as Ideal World. Plaintiffs have alleged that Pezaris has directly infringed EMI's copyrights by, *inter alia,* repeatedly reproducing and transmitting to others -- including to individuals in New York -- computer files embodying EMI's copyrights. (*See* Am. Compl. ¶¶ 1; 29; 40; 63-71; 101-104.) Plaintiffs have further alleged that Pezaris has contributed to the infringement of EMI's copyrights by others (including those residing in New York), including by providing those individuals with the site and services from which unauthorized copies of EMI's recordings and compositions may be reproduced and further transmitted, and by enabling them to search for, and

by directly linking them to, unauthorized copies on third-party sub-sites, from which those copies may be further downloaded and transmitted, all without authorization. (*See id.* ¶¶ 1; 7; 29; 43; 54; 72-81.)[5]

*Second*, the Amended Complaint also sufficiently alleges that Pezaris has committed tortious acts within the state of New York. Copyright infringement is a tort. *See, e.g., McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) (Rakoff, J.). Thus, Pezaris committed a tortious act of copyright infringement within New York State each time he permitted, encouraged, and enabled an individual in New York to upload, download, stream, view and/or listen to a copyright-protected video or sound recording without the express permission or license of Plaintiffs, all as alleged in the Amended Complaint. (*See, e.g.,* Am. Compl. ¶¶ 1; 7; 29; 43; 54; 72-81.) *See also Editorial Musical Latino Americana, S.A., v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993) (Sweet, J.) ("By causing and directing the manufacture and distribution of the Infringing Phonorecord, Sanchez [MAR's owner and president] has committed a tort in New York, and maintains the same contacts with New York as does MAR."); *Colour & Design*, 2005 U.S. Dist. LEXIS 10964, at *4 ("Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers" pursuant to CPLR 302(a)(2)) (citations and quotations omitted); *Citigroup Inc.*, 97 F.

---

[5]    Although in *Warner Bros.*, Judge Pauley considered evidence that Ideal World had transmitted files to at least 379 New York users, he noted that "even a single New York business transaction may be sufficient provided the cause of action arises 'out of the subject matter of the [transaction].'" 516 F. Supp. 2d at 261 (citation omitted); *see also Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 198 (1988) (observing that CPLR 302(a)(1) is a "single act statute" which authorizes jurisdiction, upon a single New York transaction, over a non-domiciliary defendant who never even enters New York, so long as his activities are purposeful and there is a substantial relationship between the transaction and the claim asserted). Here, Pezaris has admitted in his declaration that *at least 125,000* Multiply users have identified New York as their residence. Given that, as Pezaris admits, it is not possible to know where a user resides if he or she does not indicate an address when signing up for the service, and given that Multiply has millions of users, the number of Multiply users located in New York is likely considerably higher. In either event, the number of Multiply users in New York dwarfs the number of transactions found sufficient by Judge Pauley to uphold personal jurisdiction.

Supp. 2d at 567 (jurisdiction established under CPLR 302(a)(2) where defendant sent mailings to New York residents aimed at soliciting their business that displayed allegedly infringing trademarks; mailings constituted allegedly tortious conduct occurring in New York because that is where the marks were received and viewed by the recipients).

*Third,* the Amended Complaint sufficiently alleges that Pezaris has committed tortious acts outside of New York which have caused injury here in New York. Indeed, for purposes of his motion, Pezaris admits that he is an infringer of EMI's copyrights. He merely contends that he cannot be sued in New York, even for infringements occurring here and injuries suffered here by EMI. "[B]ecause the plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state no matter where the infringement takes place." *Design Tex Group, Inc.,* 2005 U.S. Dist. LEXIS 2143, at *4 (citation omitted). Pezaris expected or should reasonably have expected that his unauthorized hosting of copyrighted sound recordings and musical compositions on Multiply's computer servers, his streaming, transmitting and/or distributing that content to others, and his providing the site, means, and facilities for others to infringe that content, with full knowledge of those infringing activities, would have consequences in New York, where most of the major record labels and music publishers, including EMI, may be found. *See, e.g., McGraw-Hill Cos., Inc.,* 375 F. Supp. 2d at 256 ("It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York."); *Citigroup Inc.,* 97 F. Supp. 2d at 568 (finding it reasonably foreseeable that publication of websites with offending marks would have consequences in New York); *Design Tex Group,* 2005 U.S. Dist. LEXIS 2143, at *3-4 (where defendants sold their infringing patterns to major hotel chains with numerous properties

in New York, they must reasonably have expected that sales of infringing products to those chains would have consequences in New York).

Finally, not only does the Amended Complaint clearly allege that Pezaris (as well as Multiply) has benefited financially from those infringing activities (*see* Am. Compl. ¶¶ 1; 5; 29; 56; 82-91), it is virtually indisputable that virtually all of the revenue and enhanced value of Multiply and of Pezaris derive from interstate and international commerce (including a substantial amount from New York). The allegations themselves suffice to make out a *prima facie* showing that Pezaris derives substantial revenue from interstate and international commerce. Indeed, given Pezaris' ownership of some 26% of Multiply, even were Pezaris not receiving a salary, repayment of expenses or any other form of direct compensation, the value of his ownership and investment in Multiply is necessarily enhanced by virtue of the infringing activity, thereby satisfying this requirement. Thus, jurisdiction pursuant to CPLR 302(a)(3)(ii) -- as well as CPLR 302(a)(1) and (a)(2) -- is satisfied.

### 3. The Allegations Regarding Pezaris' Knowledge And Control Of, Consent To, And Financial Benefit From, *Multiply's* Infringing Acts, Further Suffice To Make Out A *Prima Facie* Showing Of Long Arm Jurisdiction

The Amended Complaint is rife with allegations regarding the infringing activity of Pezaris himself that subjects him, personally, to long arm jurisdiction. Pezaris conveniently ignores those allegations. But the Amended Complaint also, ***indisputably,*** contains allegations regarding the infringing activity of ***Multiply*** that subjects that corporate entity to long-arm jurisdiction. Indeed, Multiply does not contest that jurisdiction. In light of the allegations in the Amended Complaint regarding Pezaris' knowledge and control of, consent to, and financial benefit from, Multiply's infringing acts, personal jurisdiction over Multiply equates to personal jurisdiction over Pezaris.

In a copyright action, "[t]he jurisdictional analysis is the same for both [a corporate defendant] and its [officer] who can be held individually liable for [the] acts of infringement." *Editorial Musical Latino Americana S.A.*, 829 F. Supp. at 66 (finding jurisdiction over both record company and its president where company distributed and sold infringing phonorecords in New York). It has long been the law that "[a] corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable." *Id.* (citation omitted); *Colour & Design*, 2005 U.S. Dist. LEXIS 10964, at *6-7; *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 517 F. Supp. 900, 904 (S.D.N.Y. 1981) (Lasker, J.) (president and operating head of company who personally participated in infringement of fabric design individually liable for infringement); *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.* 256 F. Supp. 399, 404 (S.D.N.Y. 1966) (Weinfeld, J.) (advertising agency and its president could each be liable for infringement by company that manufactured and distributed infringing recordings given factual averments of their participation in the transactions). Thus, courts in this district have repeatedly exercised personal jurisdiction over presidents and officers of infringing companies where control and financial benefit have been adequately alleged. *See, e.g., Colour & Design*, 2005 U.S. Dist. LEXIS 10964, at *6-7; *Editorial Musical Latino Americana S.A.*, 829 F. Supp. at 66; *Design Tex Group, Inc.,* 2005 U.S. Dist. LEXIS 2143, at *5.[6]

Pezaris, citing non-copyright cases, in fact concedes that personal jurisdiction *could* be asserted over him if the requisite degree of involvement or control were alleged. Thus, he cites

---

[6]    Pezaris fails to acknowledge, let alone address, this critical prong of "transitive" liability between an infringing corporate defendant and its officer. None of the cases in his brief concern copyright infringement claims. The sole intellectual property case cited is *Pilates Inc. v. Current Concepts*, No. 96 Civ. 0043 (MGC), 1996 WL 599654 (S.D.N.Y. Oct. 18, 1996) (patent infringement claims), in which the plaintiff inserted only a vague allegation that the president "controlled" the corporate defendant. *Id.* Such bare and general pleading markedly contrasts with EMI's Amended Complaint, which sets forth Pezaris' knowledge and control of, and participation in, Multiply's infringing activities. (*See, e.g.* Am. Compl. ¶¶ 1, 29, 39.)

(Pezaris Mem. at 8), for example, *Ontel Prods. v. Project Strategies Corp.,* 899 F. Supp. 1144, 1148-49 (S.D.N.Y. 1995) (Baer, J.), which supports jurisdiction over a corporate officer where there are allegations that the officer did not merely "possess[] authority to direct all the activities that gave rise to th[e] suit," but rather "personally took part in . . ." and "exercised . . . decision making authority" over such activities. He also cites *Retail Software Servs., Inc. v. Lashlee,* 854 F.2d 18 (2d Cir. 1988), which upheld jurisdiction over a corporate officer where the plaintiff had alleged that the officer had personally made oral misrepresentations and sent misleading financial documents to plaintiffs.

In light of this law and in light of Pezaris' unquestionable involvement in and control over the activities of Multiply, Pezaris simply pretends that the Amended Complaint is deficient because it does not sufficiently allege his personal involvement and control. Simply put, Pezaris does not really argue that he is really not susceptible to personal jurisdiction in this Court. Rather, he merely contends that, at least as he reads the Amended Complaint, the allegations of his involvement and control are not adequate. However, a reading of the Amended Complaint proves otherwise.

*Colour & Design,* 2005 U.S. Dist. LEXIS 10964, is instructive. There, the owners of the copyrights to two wall covering patterns sued a manufacturer and its president, alleging infringement and unfair competition. Then-District Judge Mukasey found that the plaintiffs had made allegations regarding the president's personal liability sufficient to subject the president to personal jurisdiction. Plaintiffs' complaint alleged that the president (a) "directs and controls the actions of" the corporate defendant, (b) "authorized, controlled, and directed" the unauthorized copying and manufacturing of the infringing wall coverings, and (c) received a "pecuniary

716939                                    15

benefit" from the infringement. *Id.* at *7. Those allegations are virtually identical to the ones set forth in the EMI Plaintiffs' Amended Complaint concerning Pezaris:

> Defendant Pezaris is the founder and CEO of Multiply. Upon information and belief, Pezaris is also an investor in Multiply. Multiply's actions are made under the direction, supervision, and/or control of Pezaris, and with Pezaris' knowledge. Pezaris has contributed to and does contribute to those actions. Pezaris has benefited and will continue to benefit financially from those actions.

(Am. Compl. ¶ 39.) Of course, the allegations in paragraph 39 are *in addition to* all of the allegations, discussed in Point I.B.1, above, regarding Pezaris' *personal involvement* with the infringing activities (*i.e.*, that he *himself* reproduced and transmitted computer files embodying EMI's copyrights, and contributed to the infringement of EMI's copyrights by others, including by providing those individuals with the site and services from which unauthorized copies of EMI's recordings and compositions may be reproduced and further transmitted, and by enabling them to search for (and by directly linking them to) unauthorized copies on third-party sub-sites from which those copies may be further downloaded and transmitted, all without authorization).

Indeed, Plaintiffs' allegations suffice to establish this Court's jurisdiction over Pezaris under the "agency" theory that Pezaris himself urges. Pezaris argues that a corporation is not necessarily an "agent" of an officer simply because of the officer's position with the company. (Pezaris Mem. at 8.) In order for the corporation to have acted as the "agent" of the officer with respect to a transaction, that transaction must have been performed by the corporation "with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction." *Kinetic Instruments, Inc. v. Craig J. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) (Sand, J.) (patent infringement plaintiff made *prima facie* showing of jurisdiction over president of company) (citation omitted). In *Kinetic*, the plaintiff alleged in its complaint that the infringing company's president was "involved in the day-to-day business

operations of the corporation," directed the manufacture and sale of the allegedly infringing product, and controlled the corporation. *Id.* at 485. The *Kinetic* plaintiff also alleged that the president profited from the corporation's business activities which included the infringement. *Id.* The Court accepted these allegations as a legally sufficient claim that the corporate entity served as the president's agent in New York. *Id.*[7]

Pezaris would apparently have the Plaintiffs make specific allegations regarding, for example, precisely how or when he structured the Multiply site to make it the infringement machine that it is, or the instructions he gave to others as to how to make it so. EMI believes that the facts will demonstrate that Pezaris is the person who created Multiply and who devised its infringing operations and created its business model. But of course, EMI is not required to allege chapter and verse of specifics regarding Pezaris' activities and control. That is not what notice pleading requires, precisely because, at this juncture in the proceedings, that specific knowledge is solely within Pezaris' custody and control, and awaits discovery on the merits. *Maverick Recording Co. v. Goldshteyn*, No. 05CV4523, 2006 U.S. Dist. LEXIS 52422, at *9 (E.D.N.Y. July 31, 2006) (denying motion to dismiss copyright infringement claims where plaintiff alleged acts of and means by which defendant reproduced and distributed copyrighted files using Internet sufficiently for purposes of Rule 8 notice pleading; failure to provide specific instances of infringement rightly the "province of the discovery phase and summary judgment"), *citing Elektra Entm't Group, Inc. v. Santangelo*, No. 05CV2414, 2005 U.S. Dist. LEXIS 30388, at *8 (S.D.N.Y. Nov. 28, 2005) (McMahon, J.) (under Rule 8, plaintiff alleging copyright

---

[7]    As the *Kinetic* court discusses separately, this Court could also exercise jurisdiction over Pezaris if it were shown that Multiply was his "alter ego" which he had stripped of all corporate assets in order to avoid liability. 802 F. Supp. at 985. Should Plaintiffs learn through discovery and deposition testimony that Pezaris' degree of control or conduct of Multiply's affairs warrants such piercing of the corporate veil, they will seek leave from this Court to amend their complaint appropriately.

infringement need only give notice of claim, leaving factual details and evidentiary issues to be developed during discovery).

Tellingly, the self-serving declaration submitted by Pezaris in connection with this motion only further buttresses the allegations made in the Amended Complaint regarding Pezaris' control and financial benefit. There, Pezaris admits that he participates in all "[d]ay-to-day decisions about [Multiply's] website design features" (which decisions would include the decisions to include features that support or promote infringement, such as the search functionality and music-related digital content storage and management, and the decisions not to include features that would restrict copyright infringement, such as a content filter). (Pezaris Decl. ¶ 13.) He admits that he sits on Multiply's board (with just four other individuals), and that "the business of Multiply is overseen by" that Board. (Pezaris Decl. ¶¶ 2, 12.) He admits that he owns more than a quarter of Multiply's outstanding stock, which necessarily gives rise to a pecuniary interest in Multiply's business activities, including the infringing activities. (*Id.* ¶ 12.) And he admits that he founded the company and serves as its CEO. (*Id.* ¶ 1, 2.)

In sum, Plaintiffs have specifically alleged -- and the Pezaris Declaration admits -- that Pezaris exercises control and participation in Multiply's infringing activities which rises to a level of personal liability. For this reason, jurisdiction over Multiply, which is conceded, equates to jurisdiction over Pezaris.

## C.    Asserting Jurisdiction Over Pezaris Does Not Violate Due Process

Pezaris' own infringing acts, as well as his participation in and supervision of the acts of Multiply, suffice to establish "minimum contacts" with New York -- the second prong of the jurisdictional inquiry. Minimum contacts exist when a defendant's "'conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there.'"

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Pezaris' unauthorized hosting of thousands of computer files embodying the music owned and copyrighted by New York plaintiffs, his streaming, transmitting and/or distributing those files to thousands of New York residents, and his providing the site, means, and facilities for such residents to further infringe supports the finding that Pezaris should have reasonably anticipated being haled into court in New York. *See, e.g., Editorial Musical Latino, S.A.*, 829 F. Supp. 2d at 65 (offering of infringing phonorecords for sale in New York satisfies minimum contacts; *prima facie* jurisdiction established). Pezaris' knowledge and control of, consent to, and financial benefit from, the infringing activities of Multiply should also have caused him to reasonably anticipate being haled into court here, particularly since, based on the admissions of Pezaris in his declaration alone, (a) he founded the company, (b) he serves as its President and CEO, (c) he sits its board (with just four other individuals), (d) he serves on its four-member senior management team that makes "day-to-day decisions about website design features," (e) he still owns more than one-quarter of the outstanding stock of the company, and (f) the company maintains an office in New York which he has admittedly visited on "several occasions to conduct Multiply business." (Pezaris Decl. ¶¶ 1, 11-13.) For these reasons, there can be no doubt that the exercise of jurisdiction over Pezaris comports with "traditional notions of fair play and substantial justice," satisfying the requirements of due process. *Int'l Shoe Co.*, 326 U.S. at 316 (citations and quotations omitted).

Minimum contacts are also satisfied because jurisdiction over Pezaris is authorized pursuant to New York's long-arm statute, which does not reach as far as the United States

Constitution permits. Ordinarily, due process is satisfied if jurisdiction is proper under the CPLR. *Capitol Records, Inc. v. Kuang Dyi Co.*, 03 Civ. 0520 (LAP), 2004 U.S. Dist. LEXIS 3305, at *7 (S.D.N.Y. Mar. 1, 2004) (Preska, J.) (denying motion to dismiss where California corporate defendant made sales of allegedly infringing doll to New York entities who in turn resold infringing product in New York), *citing Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 91 (S.D.N.Y. 1997). Because, for the reasons discussed in Point I.B above, jurisdiction over Pezaris is authorized pursuant to CPLR 302, due process is satisfied.

## II.  IN THE ALTERNATIVE, PLAINTIFFS ARE ENTITLED TO LIMITED DISCOVERY ON THE FACTS REGARDING PERSONAL JURISDICTION

While, for all of the foregoing reasons, EMI submits that its Amended Complaint more than sufficiently alleges bases for this Court's assumption of personal jurisdiction over Pezaris, if the Court should nonetheless conclude that further amplification is necessary or appropriate, Plaintiffs should be granted the right to conduct focused and limited discovery regarding the jurisdictional facts. Where a plaintiff has made a threshold, non-frivolous showing of jurisdiction, courts routinely exercise their discretion to order discovery on the jurisdictional issue. *See, e.g., Lechner v. Marco-Domo Internationales Interieur Gmbh*, 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, at *15 (S.D.N.Y. Mar. 10, 2005) (granting 60 days of limited jurisdictional discovery; denying motion to dismiss for lack of personal jurisdiction and motion to dismiss for failure to state claim); *Cosmetech Int'l. LLC*, 943 F. Supp. at 313 (granting 45 days to take discovery on issue of jurisdiction prior to denying motion to dismiss for lack of personal jurisdiction); *Warner Bros. Entm't Inc.*, 516 F. Supp. 2d at 267 (granting motion to dismiss in part and denying in part only after jurisdictional discovery had been conducted). Indeed, in several of the cases that Pezaris himself cites, the court granted the motion to dismiss only after

extensive jurisdictional discovery. *See, e.g., Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 576 (2d Cir. 1996) (plaintiff conducted "substantial discovery," deposed numerous employees of defendant, and had access to six years of sales and employment records); *Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1041 (2d Cir. 1990) (Sprizzo, J.) (parties conducted jurisdictional discovery concerning eighteen-month period prior to filing of third-party complaint); *Kiobel v. Royal Dutch Petroleum Co.*, Nos. 02 Civ. 7618 (KMW)(HBP), 04 Civ. 2665 (KMW)(HBP), 2008 WL 591869, at *2 (S.D.N.Y. Mar. 4, 2008) (Wood, J.) (plaintiffs had access to "extensive discovery" taken in related cases over ten years).

Such discovery would focus not only on whether Pezaris is subject to *long arm* jurisdiction under CPLR 302 -- which would include discovery concerning Pezaris' own direct infringements in and/or having an effect in New York, the revenues he derives from transacting business in New York, including the value of his interest in Multiply and his degree of control and participation in the infringing activities of Multiply and its users and the financial benefit that he has derived therefrom -- but also on whether he has sufficient contacts with New York to be subject to *general* jurisdiction under CPLR 301. While Pezaris' self-serving declaration itemizes a few contacts with New York that he *does not* have (*see, e.g.,* Pezaris Decl. ¶¶ 7-9, stating that he does not own or rent real or personal property in New York, does not have any bank accounts in New York, and does not have a post office box or mailing address in New York), Plaintiffs are entitled to probe Pezaris as to contacts with New York that he *does* have (including, for example, with regard to the "several occasions" that he has traveled to New York, and whether he pays taxes in New York) in order to determine whether he is subject to general jurisdiction under CPLR 301.[8]

---

[8]    Should jurisdictional discovery demonstrate, for example, that Pezaris has filed New York State tax returns in any year since 2004, maintained any credit card accounts in New York or used any New York address for purposes

Thus, should this Court conclude that Plaintiffs have not sufficiently pled jurisdiction over Pezaris, Plaintiffs are entitled to and respectfully request limited discovery regarding the facts regarding personal jurisdiction over Pezaris, including without limitation, Pezaris' degree of control and participation in the infringing activities of Multiply and its users, the financial benefit derived by Pezaris therefrom, Pezaris' transaction of business and/or persistent course of conduct in New York, and the revenues Pezaris derives from transacting business in New York.

## III. PEZARIS' VENUE OR *FORUM NON CONVENIENS* ARGUMENTS ARE MISPLACED

Finally, Pezaris submits that it would be unfair, inconvenient and unduly expensive for him to travel to New York to defend at trial against the allegations made against him personally in the action. (Pezaris Decl. ¶ 15.) Such arguments are misplaced in this Rule 12(b)(2) motion. While Pezaris has not actually made a venue motion, since his arguments sound more in venue than jurisdiction it is worth noting that with respect to venue, "[i]t is well-established that a defendant 'may be found' in any district in which he is amenable to personal jurisdiction; thus venue and jurisdiction are coextensive." *Colour & Design,* 2005 U.S. Dist. LEXIS 10964, at *12 (denying motion to transfer where personal jurisdiction found valid) (citations and quotations omitted). As for convenience, Pezaris would essentially shift the burden of inconvenience from himself to the Plaintiffs, all of whom are present here in New York, where the injury and infringement occurred. *See Capitol Records*, 2004 U.S. Dist. LEXIS 3305, at *9-11. But this is backwards logic, given that "plaintiff's choice of forum is accorded great weight and must be deferred to unless the balance of conveniences strongly favors the defendant." *Id.* at 9.

---

such as personally guaranteeing any business transaction, such factors would strongly support this Court's exercise of general jurisdiction pursuant to CPLR 301. *Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A.,* No. 05CV10773, 2007 U.S. Dist. LEXIS 37374, at *9-10, (S.D.N.Y. May 21, 2007) (denying 12(b)(2) motion by individual defendant, vice-president of corporate defendant, in action concerning breach of money transfer services agreement where individual defendant satisfied CPLR 301 general jurisdiction "doing business" standard).

Transfer would be particularly inappropriate in this case because Multiply has not contested and cannot contest jurisdiction or venue before this Court. In the event this Court were to grant Pezaris the relief that he seeks, Plaintiffs would be required to (and would) commence a suit against Pezaris in a Florida District Court. This would ensure two parallel actions concerning claims that share similar, and in some cases identical, facts. The maintenance of two such actions would waste scarce judicial resources while risking inconsistent verdicts. *Cf. Televisa, S.A. de C.V. v. Koch Lorber Films*, 382 F. Supp. 2d 631, 634 (S.D.N.Y. 2005) (Rakoff, J.) (staying New York copyright infringement action pending resolution of action in France litigating the ownership of same films; potential for judicial inefficiency and inconsistent verdicts militated against hearing New York action).

While Plaintiffs possess and expect to accumulate through discovery the evidence of massive and continuous infringement, the possibility exists that two separate factfinders could come to different conclusions, exposing the parties to the inequitable result of inconsistent verdicts. However, it is unlikely that this is the sole motivation for Pezaris' motion. Rather, the likelihood is that he hopes that by increasing the costs that Plaintiffs will incur if they are required to pursue two separate but virtually identical litigations, Plaintiffs may be discouraged from pursuing him. In the event that an infringement judgment is entered against Multiply, Pezaris can then simply walk away and thereby protect his own financial well-being. This stratagem is hinged on the pretense that EMI has not sufficiently alleged a basis for personal jurisdiction over Pezaris. For all of the reasons set forth above, Pezaris' contentions in this regard are wrong and his motion should be denied.

## CONCLUSION

For the foregoing reasons, Peter Pezaris' Motion to dismiss the Amended Complaint should be denied in its entirety.

Dated:   New York, New York
         April 25, 2008

                                        Respectfully submitted,

                                        _____
                                        Donald S. Zakarin
                                        (dzakarin@pryorcashman.com)
                                        Frank P. Scibilia
                                        (fscibilia@pryorcashman.com)
                                        Suyin So
                                        (sso@pryorcashman.com)
                                        PRYOR CASHMAN LLP
                                        410 Park Avenue
                                        New York, New York 10022
                                        Phone:  (212) 421-4100
                                        *Attorneys for Plaintiffs*